IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, | : : : | |
| Plaintiff, | : : | CASE NO. 1:21-cv-01243 |
| v. | : : | |
| MITCHELL FALTER and JESSICA DOLL, | : : | |
| Defendants. | : | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR EXPEDITED DISCOVERY**

I.     **INTRODUCTION**

Teachers Insurance and Annuity Association of America ("TIAA") respectfully submits this reply in support of its motion for expedited discovery in order to prepare for a preliminary injunction hearing. In addition to being very helpful to the issues of solicitation and retention/use of client information, TIAA is expressly entitled to expedited discovery both under the Confidentiality and Non-Solicitation Agreements (the "Agreement") signed by Defendants and applicable law.

In opposing expedited discovery, Defendants largely argue that this matter is subject to FINRA arbitration and, under the FINRA Code of Arbitration Procedure, depositions are "strongly discouraged." This case, however, is *not* subject to FINRA arbitration. Plaintiff is not a FINRA member. Defendants' opposition also conveniently fails to mention that they too *no longer are registered with FINRA*.

Defendants' Agreements, which form the basis of Count I of the Complaint, also

are between Defendants and the entity with which they were employed, TIAA.  (*See* Exhibits "A"-"B" to the Complaint at p. 1).  By their own admission, Defendants were employed by TIAA – *not the FINRA broker dealer*.  (*See* Defendants' opposition to TIAA's preliminary injunction motion at p. 11).  It is black letter law as well that an employee owes a duty of loyalty/fiduciary duty to his or her employer.  Count II against Falter, therefore, is based on the breaches of his loyalty/fiduciary duty to TIAA – *not to the FINRA broker dealer*.

       Indeed, one need look no further than Defendants' own opposition to confirm this case is not arbitrable.  On page 5, Defendants rely on FINRA Rule 13200(a) *which limits a "Required Arbitration" to disputes involving "Members" or "Associated Persons."*

       Doll's reliance on a Pre-Hire FINRA Rule 2263 Arbitration Disclosure is especially disingenuous.  (Defendants' Opposition at p. 6).  Three lines from the bottom of page 6, where the pertinent language is quoted, Defendants use ellipses ("…") rather than quoting the language in its entirety.  The language Defendants strategically exclude reads as follows: "*that is required to be arbitrated*."  (*See* Ex. B to the December 6, 2021 Declaration of Jessica Doll opposing expedited discovery at para. 1).  Since this dispute is not between "Members" and "Associated Persons," arbitration is *not* required, and the Pre-Hire Arbitration Disclosure is irrelevant.

       Importantly, even were this case subject to FINRA arbitration (and it is not), TIAA still would be entitled to expedited discovery.  Courts throughout the country consistently grant expedited discovery in aid of preliminary injunction motions filed by FINRA firms to preserve the *status quo* pending FINRA arbitration.  In a very recent decision, *Morgan Stanley Smith Barney LLC v. Sevcik*, Case No. 1:21-cv-01120-AA (D. Or. Oct. 6, 2021), the court found "good cause to permit limited, expedited discovery before the hearing on Morgan Stanley's

2

request for a preliminary injunction" pending FINRA arbitration. (*See* Exhibit "A" hereto). The court permitted Morgan Stanley to conduct three depositions and seek documents, more discovery than TIAA seeks here. In granting expedited discovery in cases subject to FINRA arbitration, courts routinely reject the very arguments made by Defendants here. *See, e.g., A.G. Edwards & Sons, Inc. v. Marcolla*, 2007 U.S. Dist. LEXIS 77170, at *8-9 (C.D. Ill. Oct. 17, 2017) (rejecting defendant's reliance on the language in the FINRA Code that "depositions are strongly discouraged in arbitration," the court held: "The discovery allowed by this Court is not discovery within the arbitration, but rather discovery on the request for temporary injunctive relief that is properly before this Court."); *Giger v. Ahmann*, 2010 U.S. Dist. LEXIS 86821, at *6 (N.D. Ill. Aug. 17, 2010) (denying protective order to prevent deposition, court noted: "Ahmann also claims Giger is using the deposition to circumvent FINRA rules governing the arbitration. Giger denies this contention, and the court sees no reason to doubt Giger at this time. The discovery in this action is governed by the Federal Rules, not the FINRA rules.").

Yet again, to confirm TIAA would be entitled to expedited discovery even were this case subject to FINRA arbitration, one need look no further than Defendants' *own* opposition. Citing U.S. Supreme Court authority, Defendants argue that "[j]ust as they [parties to an arbitration agreement] may limit by contract the issues under which they will arbitrate [citation omitted] **so too may they specify by contract the rules under which that arbitration will be conducted**." (Defendants' Opposition at p. 9) (bold in the original). Here, both Defendants *expressly agreed* to expedited discovery in their Agreements. In any event, however, the simple fact remains that this case is not arbitrable.

Defendants' remaining arguments are equally without merit. Relying on another case involving Melanie Simons, for instance, Defendants ignore that this other case *does not*

3

*even involve the improper solicitation of clients or misuse/retention of confidential information*. (Defendants' Opposition at pp. 4-5). Melanie Simons, the defendant in the New York action, is the CEO of Defendants' new employer, Reframe Wealth, and, therefore, her deposition in this case is very relevant. She likely possesses information pertaining to Defendants' communications with TIAA's clients as well as any instructions they were given with respect to contacting those clients before or after they left TIAA. Far from seeking a "mulligan," in the instant case, TIAA is trying to enjoin conduct that was not even at issue in that other case and Ms. Simons has vital testimony to offer in support of TIAA's preliminary injunction motion.

Defendants' reliance on a Texas case against David Ahlquist is equally misplaced. (Defendants' Opposition at p. 7). In that case, TIAA's broker dealer (a FINRA member) was a plaintiff and Mr. Ahlquist (unlike Defendants) continued to be FINRA registered. Also, the court *granted* expedited discovery. (*See* Exhibit "B" to TIAA's motion for expedited discovery). The mere fact that TIAA's counsel cited FINRA awards in prior correspondence is also meaningless and in no way alters the fact that the instant case is not arbitrable.

Simply put, Defendants' opposition to TIAA's request for expedited discovery is without merit. Expedited discovery would significantly streamline the preliminary injunction proceedings, and Defendants expressly consented to it in their Agreements.

        **II.**      **STATEMENT OF FACTS**

Try as they might to deny violating their obligations to TIAA, the evidence dictates otherwise. Of course, the purpose of TIAA's expedited discovery motion is to obtain *further* evidence so as to allow the Court to make a ruling on its pending preliminary injunction motion based on a full – not just a partial – record.

With respect to TIAA's confidential information, while citing to the Covid-19

pandemic and the necessity to work remotely, Falter does not deny emailing his cell phone number to *dozens* of clients in December 2020 and January 2021, just shortly prior to his notice of resignation and months into the pandemic. *Compare* Falter Dec., ¶ 9 *with* Conway Dec., ¶ 25. To the extent he communicated with TIAA clients on his personal cell phone prior to his departure, client contact information would be electronically stored in his cell phone.

Falter's claim that he "was never warned by anyone, including Hank Conway ('Conway'), that providing my personal cell phone number to clients was a violation of TIAA policy," and that he "was never approached or otherwise warned by Conway about giving away my personal cell phone number to clients," also is directly contradicted by Mr. Conway's Declaration wherein he makes clear that he reminded Falter doing so was "violation of company policy" and that Falter "acknowledged knowing it was against TIAA policy." *Compare* Falter Dec., ¶¶ 15-16 *with* Conway Dec., ¶¶ 29-30. As Mr. Conway further states in his Declaration, Falter failed to disclose to him that he (Falter) had provided his personal cell phone to dozens of TIAA clients and, by doing so, Falter enhanced the odds TIAA clients would call him once he joined a competing firm. Conway Dec. at ¶¶ 31-32. Of course, Falter's Declaration cannot be simply taken at "face value." The very purpose of discovery is to allow a party such as TIAA a meaningful opportunity to challenge averments it vehemently disputes.

As for Falter's claim that he "did not possess" any confidential information following his resignation, *see* Falter Dec. at ¶ 24, that too is very much in dispute. In fact, in their opposition to TIAA's preliminary injunction motion (at pp. 15-16), Defendants appear to challenge whether client names and phone numbers are confidential, leaving open the distinct possibility that Falter *does* continue to retain client names/phone numbers on his personal cell phone and simply disputes that this information is "confidential." Under their Agreements (at ¶

5

1), however, and applicable law, client names and phone numbers unquestionably are confidential information.

It also is quite telling that, in its initial demand letter to Falter, TIAA stated as follows: "All Confidential Information as defined by your Agreement also must be purged from any computers and/or portable devices including, without limitation, the phone numbers of TIAA clients on your personal cell phone." (*See* Complaint Ex. C at p. 3). *Nowhere* does Falter represent to the Court that he purged any client identities and/or phone numbers from his personal cell phone and other personal devices.

Falter further admits stating in a Facebook post that, in connection with his move to Reframe Wealth, "We will be approachable, *honest* advocates for our clients' well being." Falter Dec., ¶30, Exhibit C (emphasis added). Falter's use of the word "honest," TIAA submits, was intentional and to contrast his new venture from TIAA. And while Falter claims "only" eight TIAA clients are his Facebook friends, not only is this a matter for discovery but disparaging TIAA to just one client, much less eight, constitutes a violation of his non-disparagement provision. *Id.* at ¶31.

In addition, although Falter claims that he did not falsely tell a TIAA client that Ms. Huber (the client's Wealth Management Advisor at TIAA) was "overwhelmed," that it would "help" Ms. Huber if the client moved to Falter's new venture, and that it was not necessary for the client to contact Ms. Huber because he (Falter) had been "in contact," Ms. Huber's notes of her conversation with the client cast very serious doubt on the veracity of Falter's denial made "under penalty of perjury." *See* Exhibit "A" to the Declaration of Thomas J. Momjian, attached hereto as Exhibit "B".

Falter further does not dispute that the client transferred to him at Reframe

6

Wealth. Ms. Huber is the same TIAA employee who sat next to Falter and overheard him tell individuals, prior to his resignation, that he was "overwhelmed" and "frustrated" with TIAA, including about changes to TIAA's compensation package. In light of Ms. Huber's notes directly contradicting Falter's claim he did not make the aforementioned *false* statements to a TIAA client as part of his efforts to divert the client to his new venture, one must view Falter's denials that he told TIAA clients, before even resigning, that he was "overwhelmed" and "frustrated" with a healthy degree of skepticism.

Significantly, Falter also *admits* that, after joining Reframe Wealth, he became an "authorized party" on at least 20 TIAA accounts, allowing him access to confidential information pertaining to those accounts. Falter contends that such designation is proper; however, there can be no dispute that Falter became an "authorized party" to TIAA clients which also gave him an opportunity to engage in ongoing dialogue with them about their finances/investments in connection with his move to a competitor firm, even while still bound by his non-solicitation covenant. Indeed, as set forth in TIAA's motion for a preliminary injunction, solicitation can occur regardless of whether the contact is initiated by the former employee or the client.

It is vital to note as well that Falter only contends he was "authorized" by clients to become an "authorized party." Falter Dec., ¶ 34. He does not swear, however, that it was the clients who initially requested that he do so, further evidencing his solicitation of TIAA clients. The facts and circumstances surrounding how Falter became an "authorized party" for at least 20 TIAA clients, and the extent to which he used it as a "gateway" to solicit their business, of course, is one of the key issues to be explored in expedited discovery.

Ample evidence exists that Doll violated her obligations too. Doll *admits* initiating contact with at least one TIAA client relationship, denying any "solicitation" and only

7

stating they she contacted the client because of concern for the client's "well-being."  Doll Dec., ¶ 20.  Ms. Doll, however, waited two months after joining Reframe before reaching out to the client.  (*See* Ex. "F" to the Doll Dec. at p. 3).  Rather than being "concerned" for the client's "well-being," which presumably would have precipitated a call by Doll to the client much earlier, the timing of Doll's call more strongly suggests that it was part of her renewed efforts to divert TIAA clients to her new venture.

More troubling, Doll's reliance at the very outset of her Declaration (at ¶¶ 2-4) on her Certified Financial Planner ("CFP") designation, especially Doll's claim that as a CFP she had "an obligation" to provide clients with "any information that is a Material change or update," very much seems to indicate Doll reached out to more than just this one client.  In this regard, while Doll may contend her CFP designation gave her "license" to call TIAA clients to "update" them, this is not the case.  *See, e.g., Merrill Lynch v. Schultz*, 2001 U.S. Dist. LEXIS 26194 (D.D.C. Feb. 26, 2001) (court held so-called "announcement" phone calls by a CFP were *solicitations*.).  Perhaps not surprisingly, Doll – just like Falter – has refused to identify the TIAA clients with whom she initiated contact after joining Reframe Wealth.

Nor does Doll dispute that, after she rejoined Reframe Wealth, she became an "authorized party" on TIAA client accounts, giving her the same opportunity as Falter to engage in ongoing dialogue with them during her non-solicitation period.  Similar to Falter, Doll also does not deny that she reached out to some or all of these clients about becoming an "authorized party" on their TIAA accounts.

### III.   LEGAL DISCUSSION

#### A)  TIAA is Not Bound by the FINRA Code.

Defendants' first argument in opposition to expedited discovery is that TIAA

8

agreed to arbitration before FINRA.[1]  This argument fails in many respects.  First, *Defendants fail to note that they are no longer registered with FINRA*.  Second, TIAA is not a FINRA member (as Defendants concede) and, as such, did not agree to arbitrate anything before FINRA.  Third, the Pre-Hire FINRA Rule 2263 Arbitration Disclosure attached as Exhibit "B" to Doll's declaration only requires arbitration *only* of disputes that are "*required to be arbitrated* under the rules of the self-regulatory organizations with which you are registering."  TIAA is *not* a member of FINRA and therefore not required to arbitrate any disputes with Defendants.  Moreover, section 7 of Defendants' Agreement states only that "*if* arbitration is required . . . ." (emphasis added).  Arbitration is not required here because TIAA, the signatory to the Agreement, is not a member firm, and the Defendants themselves are no longer registered with FINRA.

As noted above, Defendants' citation to cases where TIAA and TIAA-CREF together sued former associates seeking temporary injunctive relief pending arbitration are irrelevant since, *inter alia*, the former associates, unlike here, continued to be registered with FINRA.  Defendants' Opposition at 7-8.  No arbitrable dispute exists here.

The two New York cases cited by Defendants are totally inapposite.  In *Merrill Lynch Intl. Fin., Inc. v. Donaldson*, 27 Misc.3d 391 (N.Y. Sup. Ct. 2010), a non-member affiliate was charged with enforcing promissory note obligations in court.  The Court, in compelling the case to FINRA arbitration, held: "FINRA's arbitration requirement cannot be avoided simply by having an affiliate of MLPFS or a subsidiary of BofA fund the employment agreement." *Donaldson*, 27 Misc.3d at 397.

Indeed, unlike here, Donaldson was employed by Merrill Lynch, Pierce, Fenner &

---

[1] Separately, Defendants filed a motion to dismiss and compel arbitration.  TIAA will respond to that motion in due course.

Smith Inc. ("Merrill Lynch") itself – the FINRA broker dealer. *Id.* at 393. As the AWC attached as Exhibit "A" to the Declaration of Defendants' counsel in support of their simultaneously filed Motion to Dismiss, Merrill Lynch then used essentially a "shell" company that *did not even provide the funding for the promissory notes it sued upon* as a mechanism to evade FINRA arbitration. (*Id*. at p. 2). "Other than the promissory note, Merrill Lynch representatives had no relationship with MLIFI." (*Id*. at p. 3). Nothing remotely similar to that exists in this case. Defendants were employed by TIAA, the non-FINRA member, and received a host of other benefits from TIAA. (Complaint at ¶¶ 8-14).

In *BGC Notes, LLC v. Gordon*, 36 N.Y.S.3d 130 (A.D. 2016), an arbitration agreement between a FINRA member (BGC Financial) and a FINRA-registered employee (Gordon) was contained in Gordon's employment agreement. Similar to the facts in *Donaldson*, however, a separate promissory note agreement between BGC Notes (a non-member affiliate) and Gordon contained a provision that the agreement would be enforced in court.

The *Donaldson* and *Gordon* cases are very specific cases involving non-member affiliates attempting to enforce promissory note obligations in court, even though the promissory notes were provided to the former employees in the course of their employment with member firms. Here, the obligations at issue are directly with TIAA, a non-member with no obligation to arbitrate before FINRA. And as pointed out above, Defendants are no longer even registered with FINRA.

    B) <u>**Even if TIAA is Compelled to Arbitrate before FINRA, It is still Entitled to Temporary Injunctive Relief and the Expedited Discovery it seeks herein.**</u>

Even if TIAA were somehow obligated to arbitrate its claims against Defendants before FINRA, TIAA would be entitled to seek temporary injunctive relief in Court in

10

accordance with FINRA Code Rule 13804 (Exhibit "G" to Baum Declaration) and would still be entitled to the expedited discovery it seeks in this case. Courts throughout the country routinely grant expedited discovery where firms seek preliminary injunctive relief pending FINRA arbitration, as is the case here. *See, e.g., Morgan Stanley Smith Barney LLC v. Maloy*, 2014 U.S. Dist. LEXIS 198106, at *5 (W.D. Wash. May 13, 2014); *Prudential Ins. Co. of America v. Sandvold*, 845 F. Supp.2d 971, 973 (D. Minn. 2012); *Wachovia Securities, LLC v. Stanton*, 571 F. Supp. 1014, 1050 (N.D. Iowa, 2008); *Prudential Ins. Co. of America v. Hosto*, 2008 U.S. Dist. LEXIS 77051, at *15 (S.D. Ill. Oct. 2, 2008). In *Stanton, supra*, 571 F. Supp. at 1050, the court granted leave to "propound not more than fifteen interrogatories, including discrete subparts, and to notice and conduct depositions of not more than five persons," finding "expedited discovery may clarify matters that were outside of Wachovia's (or Stanton's) knowledge and may ultimately lead to the prompt and efficient disposition of this litigation and the parties' underlying dispute." The expedited discovery sought by TIAA is far more limited.

In a very recent decision, *Sevcik*, *supra*, the court found "good cause to permit limited, expedited discovery before the hearing on Morgan Stanley's request for a preliminary injunction" pending FINRA arbitration. (*See* Exhibit "A"). *See also TIAA-CREF Individual & Institutional Services, LLC v. Ahlquist*, Case No. 4:20-CV-917 (S.D. Tex. May 25, 2020) (Exhibit "B" to TIAA's motion for expedited discovery) (court granted TIAA expedited discovery in support of its motion for a preliminary injunction to preserve the *status quo* pending FINRA arbitration.).

Therefore, Defendants' argument that the FINRA Code (which is inapplicable in any event) does not allow for this type of discovery, Defendants' Opposition at 8-10, is without merit. Although FINRA proceedings may have certain discovery parameters and deadlines, they

in no way apply to discovery permitted by courts addressing preliminary injunctive relief issues, including deposition discovery. The above-referenced decisions clearly illustrate this.

### C) **TIAA Meets the Standards for Expedited Discovery.**

TIAA has satisfied the "good cause" standard because its expedited discovery request is in aid of its motion for preliminary injunction, and it will continue to suffer irreparable harm if it has to wait until after the parties conduct their Rule 26(f) conference. Moreover, the discovery is narrowly tailored.

It is important to reiterate that TIAA is not precluded from obtaining expedited discovery merely because Defendants have denied its allegations. The purpose of expedited discovery is to aid the Court in resolving the credibility of the parties' respective allegations and assessing the merits of the preliminary injunction motion. As TIAA set forth in its initial motion, courts in this district routinely grant motions for expedited discovery in aid of preliminary injunction proceedings.

Indeed, Defendants conveniently ignore *Reladyne Reliability Servs. v. Bronder*, 2020 U.S. Dist. LEXIS 178856, at *3 (E.D. Va. August 4, 2020), holding: "Motions for expedited discovery are routinely considered either during a court's consideration of motions for a preliminary injunction or temporary restraining order, or directly before such motions in order to prepare for a preliminary injunction argument. *Good cause exists to direct the parties to have an opportunity to engage in limited discovery in advance of the hearing on this matter.*" *Id.* (emphasis added).

The "preliminary injunction standard" cited by the Defendants is a "minority approach." *ForceX, Inc. v. Tech Fusion, LLC*, 2011 U.S. Dist. LEXIS 69454, at *15 (E.D. Va. June 27, 2011). *Kia Motors, Inc. v. Greenbrier GMC, Inc.*, 2020 U.S. Dist. LEXIS 252505

(E.D. Va. December 11, 2020) also is distinguishable. The Court in *Kia Motors,* employing both the "good cause" standard and the "preliminary injunction standard," held that because the plaintiff was willing to delay the preliminary injunction hearing to conduct a mediation, expedited discovery was not warranted. In contrast, TIAA has demonstrated a strong showing on the merits and irreparable harm and no mediation is scheduled.

Defendants' argument that TIAA "dragged its feet", Defendants' Opposition at 8, before filing this action is without merit. As an initial matter, Defendants' use of their departure date as a "starting point" is groundless. TIAA obviously could not file this action without evidence of wrongdoing and based merely on their departures.

Also, Defendants ignore the fact that TIAA sent numerous communications to Defendants or their counsel in an effort to obtain compliance with their contractual obligations. Unfortunately, it did not work. In fact, it was not until late September 2021 that TIAA first found out that Falter falsely told a client that Ms. Huber was "overwhelmed," that it would "help" her if the client moved to Falter's new venture, and that it was not necessary for the client to contact Ms. Huber because he (Falter) had been "in contact," Hardly "dragging its feet", TIAA gave Defendants every opportunity to comply with their obligations. Having failed to do so, TIAA's only choice was to seek to enjoin them through court intervention.

### D) **TIAA's Requests are Narrowly Tailored.**

The discovery outlined in TIAA's initial motion is very narrowly tailored only to the key preliminary injunction issues. Defendants' argument that TIAA failed to attach proposed requests or 30(b)(6) notices is weak. On pages 1 and 2 of its initial memorandum of law, TIAA sets forth with *specificity* exactly which documents it seeks and areas of testimony it expects to cover with Defendants, as well as non-party Melanie Simons, in depositions to take no more than

13

4 hours. Despite Defendants' complaint that TIAA attaches no 30(b)(6) deposition notices, TIAA seeks no 30(b)(6) witness. Nevertheless, TIAA has provided the areas of inquiry with great detail.

The four categories of documents sought by TIAA from Defendants are their communications with TIAA clients (*excluding* communications with clients after they opened an account at Reframe Wealth), any client information Defendants retained, used or disclosed upon their departures from TIAA, documents reflecting Defendants' terms of affiliation with Reframe Wealth, and communications between Defendants and Reframe Wealth regarding their transitions. These are very narrowly tailored requests. Defendants' reliance on *ForceX, Inc. v. Tech. Fusion LLC*, 2011 U.S. Dist. LEXIS 69454, at *13-14, n.3 (E.D. Va. June 27, 2011) is misplaced. In *ForceX*, unlike here, plaintiff sought 16 requests for production, including "*all* cell phone, text message, and voicemail records." *Id.* (emphasis added). By contrast, TIAA seeks limited communications – only (i) with TIAA clients; and (ii) with Reframe Wealth regarding Defendants' transitions. Simply put, unlike in *ForceX*, the expedited discovery sought in this case is clearly spelled out and extremely limited.

Finally, Defendants' argument that Doll should not be subject to the same expedited discovery as Falter is without merit. Defendants signed the identical Agreement. TIAA has alleged breaches by both Defendants. TIAA has a pending motion for preliminary injunctive relief against both Defendants. Accordingly, the expedited discovery TIAA seeks is entirely proper.

## **CONCLUSION**

For the foregoing reasons, and those set forth in its initial moving papers, TIAA respectfully requests that its motion for expedited discovery be granted.

By:  /s/ Amy M. Pocklington
Amy M. Pocklington, Esquire
Virginia State Bar Number 45233
amy.pocklington@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, PC
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA  23219
Telephone: (804) 663-2330
Fax: (855) 843-1809

Christopher C. Coss
Thomas J. Momjian
COSS & MOMJIAN, LLP
111 Presidential Boulevard, Suite 214
Bala Cynwyd, PA 19004
Telephone: 610-667-6800
Fax: 610-667-6620

*Counsel for Plaintiff*

Dated:   December 13, 2021

## Certificate of Service

I hereby certify that on this 13th day of December, 2021, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, and I will also serve a copy of this filing on counsel for Defendants by overnight mail:

| | |
|---|---|
| Matthew B. Baum, Esq.<br>Ellenoff Grossman & Schole LLP<br>1345 Avenue of the Americas – 11th Floor<br>New York, NY  10105<br>mbaum@egsllp.com | Edward E. Islser, Esq.<br>Micah Ephram Ticatch, Esq.<br>Isler Dare PC<br>1945 Old Gallows Road<br>Suite 650<br>Vienna, VA 22182<br>(703) 748-2690<br>Fax: (703) 748-2695 |

By:   /s/ Amy M. Pocklington
Amy M. Pocklington, Esquire
Virginia State Bar Number 45233
amy.pocklington@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA  23219
Telephone: (804) 663-2330
Fax: (855) 843-1809

49633444.1